# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY J. MYNATT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| vs. ) | No. 05-3299-CV-S-JCE-SSA |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **O R D E R**

Plaintiff is appealing the final decision of the Secretary denying his application for disability insurance benefits under Title II of the Act, 42 U.S.C. § 401 et seq. and supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. § 1381 et seq. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be affirmed.

### Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision if it is supported on

1

the record as a whole.  Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A).  Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990).  In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment.  Id.  Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled.  The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions.  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).   When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski.  The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole.  Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

Discussion

Plaintiff was 24 years old at the time of the hearing before the ALJ. He has a tenth grade education. Plaintiff has prior work experience as an automobile detailer.

At the hearing before the ALJ, plaintiff testified regarding his problems with depression, anger management, and knee injuries. He stated that his last job lasted a month and a half before he quit because his boss was "breathing down his neck." [Tr. 38]. Plaintiff testified that his main problem with working is his anger, which often causes him to explode when a supervisor tells him to do something, and which creates problems with coworkers if they tell him to do something. It was his testimony that he has quit any job he has had. He described problems getting along with his family, problems concentrating, and problems with sleeping. As a result, he is often tired during the day, and the Paxil also makes him tired. It was his testimony that he also has pain in both knees. He stated that he sees Dr. Jenkins every six months. It was his opinion that he cannot hold down a job because of his medications.

In terms of his daily activities, plaintiff testified that he usually gets up around noon or 1:00. He might spend some of the day talking to his girlfriend on the telephone, or going to see her. He sees his friends on a regular basis, and they usually come to his house. Sometimes they go out to eat or to the movies. When he is home he watches some television. He helps his mother by making his bed and taking care of his room. He has some pain with his knees, and takes Mobic for pain.

The ALJ found that plaintiff has not engaged in substantial gainful activity since September, 2000. She further found that the medical evidence established that plaintiff suffers from depression, a severe impairment. It was the ALJ's finding that plaintiff was not fully

3

credible. She found that plaintiff had "no impairment-related exertional limitations, and can perform simple, repetitive, low-stress work that does not require public contact or customer service." [Tr. 23]. It was her opinion that plaintiff was able to perform his past relevant work as an automobile detailer, and could perform other work including laundry worker and furniture cleaner. Therefore, it was the ALJ's finding that he is not under a disability as defined by the Act.

Plaintiff contends that the ALJ's decision should be reversed because the ALJ erred in not properly according weight to his treating physician, Dr. Jenkins. Specifically, he asserts that the opinion of Dr. Jenkins is supported by other medical records, including those involving his hospital treatment, as well as Dr. Jenkins' own records. Further, plaintiff notes that he had a prior finding of disability as an adolescent, which further supports his claim of a current disability.

It is defendant's position that the ALJ conducted a proper credibility determination, in which she determined that plaintiff's daily activities suggested a greater ability to deal with the public and in the workplace than he claims. Defendant also asserts that the ALJ properly noted that plaintiff has shown significant improvement on medication. Defendant contends that Dr. Jenkin's opinion was unsupported by his own treatment notes as well as the record as a whole, and that there is substantial evidence in the record to support the ALJ's decision.

A review of the record indicates that plaintiff had a history of major depression as an adolescent, which included a month's hospitalization in 1996. He had no further treatment for several years. Plaintiff was also examined by a psychologist at the request of Missouri Division of Family Services in 2001. He was diagnosed with bipolar disorder and intermittent explosive

4

disorder. Although a psychiatric consult was suggested, no treatment was provided. The record also contains a letter from John Duncan, LCSW, in which he stated that he had previously provided counseling services to plaintiff during his adolescence because of family conflict, academic problems, anger management issues, and conduct disorder. He stated that he saw plaintiff in February, 2002, for a few sessions, when plaintiff was again having problems with anger and aggressive behavior. [Tr. 133]. There are also treatment notes in the record from an emergency room visit in 2004 when plaintiff was a customer at "Cowboys 2000," and was injured when he was struck in the head by a gate, which had been kicked by a bull.

 Plaintiff began seeing Dr. Jeffrey Jenkins in May of 2003. He complained of depression, isolation, sleep problems, passive suicidal thoughts, and irritability problems. Dr. Jenkins diagnosed him with major depressive disorder, recurrent, without psychotic features, amphetamine dependence in early partial remission, and other psychological and environmental problems. He assessed him with a GAF of 50, and prescribed Zoloft and Sertraline. [Tr. 299-301]. When Dr. Jenkins saw plaintiff again in July, he complained of insomnia from the Zoloft, but otherwise reported doing well. Dr. Jenkins added Trazadone at that time. In September, when plaintiff still reported sleep problems, Dr. Jenkins took him off the Zoloft and started him on Paxil. The doctor completed a Medical Source Statement-Mental in September of 2003, in which he opined that plaintiff could not respond appropriately to supervision, co-workers, and usual work situations on a regular basis, could not deal with and adapt to changes in a routine work setting, could not interact with the general public, and could not complete a normal work day or work week without undue interruptions from psychologically based symptoms. [Tr. 292]. In November of 2003, the doctor's treatment notes indicate that plaintiff was doing well on the

5

Paxil, and reported no side effects. Dr. Jenkins discontinued the Trazadone at that time. His treatment notes from February, 2004, indicate that plaintiff stated that he was back together with his girlfriend, after having had an order of protection against him. The doctor recommended couples counseling, and maintained his medications. He observed that plaintiff did not think he needed counseling because things were going well. In June of 2004, Dr. Jenkins completed another Medical Source Statement-Mental in which he opined that plaintiff was markedly limited in his ability to accept instructions and respond appropriately to criticism by supervisors. He also found that he had moderate limitations in his ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; interact appropriately with the general public; ask simple questions or request assistance; get along with coworkers or peers; and to set realistic goals or make independent plans. [Tr. 310-11].

In rendering her decision, the ALJ found that plaintiff's depression was significantly alleviated with medication, and that his condition was continuing to improve. It was her finding that, "[h]aving had the opportunity to observe the demeanor of the claimant the undersigned finds that although he has medically determinable severe impairments of major depression, intermittent explosive disorder, and polysubstance abuse in partial early remission, these impairments do not cause the degree of limitations alleged by the claimant. The limitations alleged by the claimant appear to be more of a personal choice rather than impairment or illness imposed limitations." [Tr. 20]. In reaching the conclusion that plaintiff's condition was not disabling, the ALJ noted that: his treating physician had reported significant improvements in his mental state; he has been able to re-establish a relationship with his girlfriend; he visits and

6

socializes with friends; he no longer receives psychiatric treatment and his treating physician reported he was not motivated to receive treatment because he felt things were getting better; and his activities, particularly being out with his friends "engaging in an active and rowdy social life," present a different picture than the one plaintiff attempts to portray. [Id.]. She discredited the opinion of Dr. Jenkins because she found the Medical Source Statements to be "so discrepant with the other evidence of record, including his own treatment notes, that they are entitled to little weight as evidence." [Id.].

The law is clear that "[a] treating physician's opinion is generally entitled to substantial weight, although it is not conclusive and must be supported by medically acceptable clinical or diagnostic data." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). A treating physician's opinion is not automatically controlling, but rather, must be consistent with the record as a whole. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) (while medical source opinions are considered in assessing the residual functional capacity, final decision is left to the ALJ). In reviewing the record as a whole, the Court finds that there is substantial evidence in the record to support the ALJ's decision to not afford controlling weight to Dr. Jenkins' opinion. In this case, the Court finds that the degree of limitations suggested by Dr. Jenkins in the Medical Source Statements are not consistent with his own treatment notes, and suggest greater restrictions than indicated in those notes. Plaintiff did report improvement with the anti-depressant, Paxil. His improvement with medication and the improvement in his personal life were noted by Dr. Jenkins in his treatment notes, and it was also noted that plaintiff did not consider counseling because he felt he was doing well. If an impairment can be controlled with medication, it cannot be viewed as disabling. Brown v.

7

Barnhart, 390 F.3d 535, 540-41 (8th Cir. 2004). Based on the record as a whole, the Court finds that there is substantial evidence to support the ALJ's decision to accord little weight to Dr. Jenkins' opinion regarding plaintiff's extreme degree of limitations.

Further, the ALJ's conclusion that plaintiff was not wholly credible, based on his level of daily and social activities, is also supported by the record. The ALJ properly discounted plaintiff's subjective complaints based on inconsistencies in the record as a whole. Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996). There is ample support in the record for the ALJ's conclusion that plaintiff had responded well to medication, that he was doing well, and that he was able to respond appropriately to others when he chose to do so. While the record indicates that plaintiff had had serious psychiatric problems as an adolescent, there is nothing in the record to suggest that his condition had again reached that level of severity. To the contrary, it appeared that he had responded well to fairly minimal treatment. There is substantial evidence in the record to support the ALJ's decision to discredit plaintiff on the basis of his level of social activity, and his ability to get along with others when he chose to.

Based on the record before it, the Court finds that the ALJ's decision is supported by substantial evidence in the record, Clark v. Sullivan, 768 F. Supp. 278, 280 (W.D. MO 1991), and that plaintiff has failed to meet his burden of proving that he has an impairment that precludes him from engaging in substantial gainful activity. The ALJ's findings that plaintiff was not disabled and could perform his past relevant work and other work available in the national economy are supported in the record as a whole. Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

                                                  /s/ James C. England  
                                                  JAMES C. ENGLAND, CHIEF  
                                                  United States Magistrate Judge

Date:   6/5/06